No. 38,976

THE STATE OF KANSAS, *Appellee*, v. ARTHUR OSBORNE PHILLIPS, alias JAMES H. PHILLIPS, *Appellant*.

(259 P. 2d 185)

Opinion filed July 6, 1953.

*Don Wyman*, of Hutchinson, argued the cause and *Duane Roberts*, of Hutchinson, was with him on the briefs for the appellant.

*John R. Alden*, of Hutchinson, argued the cause, and *Harold R. Fatzer*, attorney general, and *Fred C. Preble*, of Hutchinson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: Defendant was convicted of perjury in three counts. He appeals.

The charges all grew out of testimony given by defendant in the trial of a civil action in which he was a defendant and had filed

a cross petition. The first count charged that he testified that his name was James H. Phillips; in the second count that he was a graduate chemical engineer; that he graduated from Penn State College; and in the third count that he was a graduate of the School of Medicine of the University of Tennessee; all counts charged that these statements were material and false.

The matter arose when defendant was involved in an automobile collision with the Bloom Co-operative Exchange. The Exchange sued him and he filed a cross petition. In his cross petition he alleged a large earning capacity on account of being a graduate engineer and a graduate doctor and that the injuries received in the collision had reduced his earning capacity. On the trial of the civil action he took the stand and testified. Out of this testimony grew the prosecution. Immediately following his testimony in the civil case his cross petition was dismissed. In a few days he was arrested and charged with prejury. He was without funds and the court appointed counsel who have ably represented him. The case was here once before. (See *State v. Phillips*, 172 Kan. 505, 241 P. 2d 503.) In the trial of that action the state put the courtroom clerk on the stand who testified that she had sworn defendant, and the court reporter who read part of the defendant's testimony in the Bloom case, where defendant had testified on direct examination, as charged in the information, and had later on cross-examination retracted those statements and admitted they were false. The state had then rested. The defendant demurred to the evidence. His demurrer was overruled. He offered no evidence and was convicted on all three counts. On appeal we reversed and ordered a new trial on account of insufficiency of evidence.

When the case came on to be tried the second time, after the county attorney made his opening statement, defendant moved that he be released from custody and the charges against him be dismissed on the ground that he had been in jeopardy. This motion was overruled.

The courtroom clerk again testified that she had administered the oath, the clerk of the district court identified the files in the Bloom case, the court reporter again read portions of defendant's testimony to the jury.

The state then introduced the Assistant Dean of the School of Medicine of the University of Tennessee. He testified concerning the files at the university and read to the jury letters, showed copies of an affidavit and produced two pictures which he testified were

pictures of a James H. Phillips who graduated from the university in 1916.

He testified he found no record on Arthur Osborne Phillips or Arthur O. Phillips.

The state next called the assistant to the registrar of Pennsylvania State College. He testified concerning the files of that college and read to the jury two letters which he had found in the file marked "James H. Phillips." He testified that he found no record of an Arthur Osborne Phillips.

The state then introduced a certified copy of the conviction of Arthur O. Phillips in the District Court of the United States for defrauding the government, an authenticated copy of the conviction of Arthur O. Phillips in the Superior Court for Arizona for the illegal practice of surgery; then a certificate of record of the Warden of the Federal Penitentiary at Leavenworth containing certificates of commitment of Arthur O. Phillips.

The defendant's demurrer to this evidence was overruled.

Defendant then introduced evidence tending to show that he was the victim of an entrapment conceived by the insurance company for the Bloom Co-operative Exchange.

Defendant was convicted on all three counts.

The defendant filed a motion for a new trial on the ground the verdict was not sustained by the evidence; was contrary to the law; the court erred in not giving defendant's requested Instruction No. 1; in instructing the jury that the facts alleged to have been testified to by the defendant were material facts as given in Instruction No. 5; in giving Instruction No. 4 concerning corroboration; in allowing the testimony of the Assistant Dean of the School of Medicine of the University of Tennessee to go to the jury; in allowing the exhibits showing former conviction of defendant to go to the jury; in allowing prejudicial testimony to go to the jury; in not sustaining defendant's motion for dismissal of the charges against him on account of former jeopardy; in overruling his demurrer to the state's evidence; that the verdict was the result of passion and prejudice; in overruling defendant's objections to comments made by the county attorney.

The specifications of error follow substantially the motion for a new trial.

Defendant in his brief states the questions to be:

"1. When the conviction by a District Court is reversed on a principle of law urged in a demurrer to the evidence in the lower court, does the unasked

granting of a new trial by the Supreme Court on that principle place defendant in double jeopardy?

"2. What is the effect of a recantation of allegedly perjurious statements?

"3. Who may testify concerning university records?

"4. Are letters whose authors are unidentified, copy of an affidavit whose author is similarly unidentified, pictures of a man identified solely by an affidavit made by an unidentified deponent on the back of one of them admissible in evidence in a criminal trial, or are they hearsay because of the lack of cross examination of their sources?

"5. When the identity of the accused as the person who committed the crime, if one were committed, is previously established by other relevant evidence, may evidence of prior crimes be received to establish the identity of the accused?"

Defendant argues first that his motion to dismiss the charges against him should have been sustained because the present trial put him in jeopardy twice for the same offense. He bases this argument on the fact that when he was convicted before, we reversed and ordered a new trial on account of insufficient evidence. This argument is not good. When defendant was convicted before one of his grounds for a new trial was that the verdict was not sustained by sufficient evidence. This motion was denied by the trial court. On appeal we reversed on the ground that the evidence of the falsity of the statements defendant was charged with making was not sufficiently corroborated. The right of appeal is not constitutional. It is conferred by statute. The appellant must take it on the terms provided by the statute. (See *In re Christensen,* 166 Kan. 671, 203 P. 2d 258.) The result is that when a defendant after conviction asks for a new trial he waives the right to double jeopardy. (See, also, *State v. McCord,* 8 Kan. 232.) See, also, G. S. 1949, 62-1602, which provides as follows:

"The granting of a new trial places the parties in the same position as if no trial had been had; the former verdict cannot be used or referred to either in the evidence or argument."

Defendant next argues the trial court erred in overruling his demurrer to the state's evidence on the ground that he had recanted all his perjured statements. On direct testimony in the trial of the civil action he gave the allegedly false testimony. On cross-examination he admitted the falsity of these statements. He argues that he should not be prosecuted for perjury because before he left the stand he testified truthfully. This argument is not good. The rule is stated in 70 C. J. S. 464, as follows:

"Since the crime, according to one view, as discussed supra § 2, is complete when the statement is once made, it has been held that the retraction or cor-

rection of false testimony before the close of the cause or proceeding in which the testimony is given does not, *ipso facto*, exculpate the witness of perjury or neutralize the testimony previously given; the oath administered to the witness calls on him freely to disclose the truth in the first instance, and not to put the court and parties to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross-examination, extraneous investigation, or other collateral means. . . ."

(See, also, 41 Am. Jur., Perjury, sec. 7, page 7.)

There are authorities holding that where the false testimony was innocently or inadvertently given the witness may retract or correct it without being guilty of perjury. We do not have such a case here, however. The retraction did not come until defendant was on cross-examination confronted with counsel who evidently was in possession of true facts.

Defendant next argues the trial court erred in admitting the testimony of the Assistant Dean of the College of Medicine of the University of Tennessee and the Assistant to the Registrar of Penn State College. Defendant had testified that his name was James H. Phillips and that he had a degree from the Medical School of Tennessee and that he was a graduate engineer from Penn State. He on the trial of the civil action had admitted the falsity of these statements. The record of this testimony was introduced but on appeal we held the proof of the falsity was insufficient. On the trial of this action the state was confronted with the problem of proving from the records of these two schools that no Arthur Osborne Phillips or rather this particular Arthur Osborne Phillips had received degrees from either one of these schools. About the only way such a burden could be sustained was by an examination of the records.

These two officers testified to such an examination and that they found no Arthur Osborne Phillips had ever attended either school. They each found a record of a James H. Phillips. This defendant had testified at first that his correct name was James H. Phillips. The state was, therefore, confronted with the problem of proving that this defendant was not he.

These two witnesses, therefore, produced various records, writings and letters found in their search of the records of the two schools. Examined critically these were nothing more than circumstances tending to prove that the defendant in this action deceived the officials of the medical school into issuing him a copy of a copy of the diploma of James H. Phillips who had graduated from there. There was also introduced to the jury a photograph of James H. Phillips. Defendant objected to these extracts from the records of the two

schools on the ground that they were hearsay and not the best evidence. These writings were not hearsay. They are covered by the rule announced in McKelvey on Evidence, 5th Edition, sec. 344, p. 607, where it states:

"Where the writing is not in issue, but merely collateral to it, it is held that the rule has no application, and parol evidence may be given, even though it covers the contents of the writing."

See, also, sec. 345, page 609, where it states:

"There is a distinction between proving a fact which has been put in writing and proving the writing itself. Because a fact has been described in writing does not exclude other proof of the fact. . . ."

The argument that they were not the best evidence is not good. We do not always require the production of voluminous records. Followed out to its ultimate end, the result of defendant's argument would be that the fact that defendant had not been a student of either one of these schools could only be proved by bringing to court all the records of the school. That is not the rule which as stated in 20 Am. Jur. 398, Evidence, sec. 449, is as follows:

"The rule rejecting secondary evidence of a writing is made subject to an exception in some jurisdictions where the originals consist of numerous accounts or other documents which cannot be examined in court without great loss of time and where the evidence sought from them is only the general result of the whole. It is proper for the witness in such case to render a summary based on an inspection of a number of such documents or, where practical, all of them. The admission of proof of this character is not a violation of the parol evidence rule, but a relaxation thereof, demanded by exigencies of the case. . . ."

(See, also, *The State v. Wolkow,* 110 Kan. 722, 205 Pac. 639.)

Defendant next argues that the evidence offered by the state of former convictions of defendant was not admissible.

Defendant testified on cross-examination in the civil action that at the times when he had testified he was in medical school he was actually in the penitentiary.

The state in this action offered the records of the proper courts to show that this statement on cross-examination was true and the one on direct examination was false. Obviously he could not have been in a medical school in Tennessee at the time he was in the penitentiary.

It is all a matter of identity. The records of former convictions can be used in a question of identity of an accused. Furthermore, this evidence was competent on the question whether the defendant being tried was James H. Phillips or Arthur Osborne Phillips.

The rule is well stated in 1952 Cumulative Supplement to .20 Am. Jur. page 35, sec. 311, as follows:

"The test of the admissibility of evidence of other crimes of an accused on trial is the connection and relevancy of the facts proved with the offense charged—whether they fairly tend to prove that particular offense or an essential element thereof."

(See, also, 3 Am. Jur. 367, Appeal and Error, sec. 825; also 20 Am. Jur. 290, Evidence, sec. 311.)

We have examined the other arguments made by defendant and find them to be without merit. There was ample evidence in this trial to prove the falsity of the statements defendant was charged with making.

The judgment of the trial court is affirmed.