48,355

STATE OF KANSAS, *Appellee*, v. JOHN HENRY THOMPSON, *Appellant*.

(558 P. 2d 93)

Opinion filed December 11, 1976.

*Stephen D. McGiffert*, of McDowell, Rice, Baska & Smith, of Kansas City, argued the cause and was on the brief for the appellant.

*Philip L. Sieve,* chief deputy district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: The defendant, John Henry Thompson, appeals from criminal convictions on two counts of aggravated robbery (K. S. A. 21-3427). Both counts arose from a robbery occurring at the 10th Street Jewelry Store in Kansas City, Kansas. William Boyice, Sr., the owner of the store, was robbed of jewelry and currency. William Boyice, Jr., the son, was robbed of a gold watch.

The robbery occurred in the afternoon of December 31, 1974. Two men entered the store armed with hand guns. One had his face partially obscured by a stocking cap and a turtle neck sweater. One of the robbers on leaving the store was heard to refer to the other as "Slim".

The younger Boyice testified that earlier in the day while he was alone in the store two men entered the store to look at merchandise. He recognized one of them as "Slim" from Kansas City, Missouri. He had met him on several previous occasions. He spoke to "Slim" but was ignored. Boyice, Jr., further testified that he recognized this same man as being one of those who took part in the robbery.

Detective Whitmill was called and he investigated the robbery. He was given the above information. Whitmill later received an anonymous phone call advising him that one of the robbers who took part in the 10th Street Jewelry Store robbery went by the name of "Crazy John". Putting together the three bits of information he had received, *i. e.,* "Slim", "Kansas City, Missouri" and "Crazy John", he made a trip to the police department in Kansas City, Missouri, where a "moniker file" was kept on individuals that the department had investigated. An investigation of this file by Whitmill produced the information that the name "Crazy John" had previously been used in referring to a man by the name of John Henry Thompson, and Thompson was also known as "Slim". Whitmill obtained a photograph of John Henry Thompson together with four additional photographs of other individuals. He presented these to both Boyice, Sr., and Boyice, Jr. The picture of John Henry Thompson was identified as that of one of the robbers. Thereafter defendant appeared in a lineup with others and he

was identified by Boyice, Jr. At the trial the defendant was identified by both Boyice, Sr., and Boyice, Jr.

The defendant relied on a defense of alibi. The only issue at the trial was identification. The jury returned a guilty verdict within thirty minutes after retiring to consider the evidence.

After reviewing the record we are convinced there was ample evidence to establish identity and guilt beyond a reasonable doubt. The trial court was justified in overruling defendant's motion for judgment of acquittal. See *State v. Gustin,* 212 Kan. 475, 510 P. 2d 1290.

The defendant's next point concerns the anonymous phone call to Whitmill by which he was advised the robbery was committed by a man named "Crazy John". At the trial the prosecuting attorney stated in substance that the state would show that Whitmill received information from an informant implicating a person "Crazy John". Defendant's counsel promptly objected to such statement as hearsay and the court admonished the prosecutor not to state the substance of the phone call.

We note when Whitmill testified he merely stated that as a result of additional information received he went to Kansas City, Missouri, looking for the full name of a man known as "Crazy John". He was not permitted to testify as to what the anonymous caller told him.

We believe the trial court's action in limiting this testimony was proper. In *State v. Murphy,* 309 So. 2d 134 (La. 1975), it is stated:

"While it is not violative of the hearsay rule for a police officer to state that he made an arrest or a search and seizure as the result of information received or a complaint, the exception is limited to the statement of fact—for, whenever he is permitted to explain the nature of the information or complaint, he does not testify to a fact but to what someone else told him." (p. 135.)

In *State v. Long,* 137 N. J. Super. 124, 348 A. 2d 202, the line dividing the admissible from the inadmissible is more clearly drawn. The New Jersey court explains:

". . . This rule is not violated when 'a police officer explains the reason he approached a suspect or went to the scene of the crime by stating that he did so "upon information received." ' *State v. Bankston,* 63 *N. J.* 263, 268 (1972). Such evidence is not admitted to establish the truth of the information received by the officer but rather to explain the reason for his approaching the scene and his subsequent conduct. *Ibid.*

"Where, however, the information as related to the jury directly or by necessary inference points to the guilt of the defendant, the testimony is

inadmissible. *Bankston, supra,* 63 *N. J.* at 271; *State v. Niesbbalski,* 82 *N. J. L.* 177 (Sup. Ct. 1912)." (pp. 133, 134.)

The substance of the anonymous phone call when considered along with the evidence as to the contents of the "moniker file" by necessary inference would have pointed to the identity and guilt of the defendant. It was properly excluded for that reason.

An officer who has received an anonymous phone call advising that a crime under investigation was committed by a man identified as "Crazy John" should not be permitted to testify as to the substance of that communication, for the substance of the communication is inadmissible hearsay when it tends to identify the accused and establish his guilt.

Testimony concerning an anonymous phone call which tends to establish the identity and guilt of an accused does not fall in the same category as a police radio dispatch. The latter serves as an explanation of the officer's action in proceeding to a particular location. See *State v. Trotter,* 203 Kan. 31, 453 P. 2d 93; *State v. Hollaway,* 214 Kan. 636, 522 P. 2d 364; and *State v. Ritson,* 215 Kan. 742, 529 P. 2d 90. Radio dispatch testimony is permissible merely to explain a sequence of events leading to action by an officer and it is not admissible to prove the truth of the matter asserted in the dispatch or to establish the identity and guilt of a named accused. Limited police dispatches are permissible under K. S. A. 60-460 and the cases cited above.

Now let us consider the propriety of the prosecutor's remarks in his opening statement. The statement in pertinent part was as follows:

". . . Detective Whitmill will tell you about how he received an anonymous phone call; had a conversation with someone. As a result of that conversation, went to the Kansas City, Missouri Police Department, looking for any possible records on a person who goes by the nickname of Crazy John. In the course of that investigation, came upon this defendant's name using— as a person who used the nickname Crazy John, . . ."

Since the substance of the call was not stated we believe that the statement was proper and the court was not in error in overruling defense counsel's objection. The substance of the phone call if stated would have referred to inadmissible hearsay but the mere fact an anonymous phone call was received was proper to explain the actions of the officer. No error was committed with regard to the phone call.

Defendant's final claim of error is directed to testimony and

comments by the prosecutor concerning the contents of the "moniker file".

In substance Detective Whitmill testified he checked the contents of this file looking for the name of "Crazy John". From the file he learned the name was associated with a person named John Henry Thompson and that Thompson was also known as "Slim". He then testified he obtained a photograph of John Henry Thompson and included the same with four other pictures for photograph identification purposes. These were viewed by William Boyice, Jr., and he picked out the defendant's picture.

The defendant objected to this testimony on the ground of hearsay and because the oral testimony was not the best evidence of the contents of the file. The trial court permitted the oral testimony saying it was not introduced for the purpose of proving the contents or to prove the truth of the statements in the file. The court further commented that it is common knowledge such a file contains considerable other information concerning past criminal records which would be highly prejudicial if the entire file were admitted into evidence. The court stated that the information obtained by Whitmill was only incidentally relevant to show a chain of circumstances leading to the picture of the defendant and as such it was purely on a collateral matter. The oral testimony was admitted.

Ordinarily the best evidence rule does not apply to writings collateral to the issue. In recognition thereof K. S. A. 60-467 in pertinent part provides:

"(a) As tending to prove the content of a writing, no evidence other than the writing itself is admissible, except as otherwise provided in these rules, unless the judge finds . . . (4) that the writing is not closely related to the controlling issues and it would be inexpedient to require its production, . . ."

It has generally been held that the best evidence rule does not apply to writings collateral to the issue. So, where the execution or existence of a writing, as distinct from its contents, does not form the foundation of the action, although it is material to the controversy, and where the purpose of the evidence is not to maintain or destroy any right involved in the action, the production of the writing may not be required, but its execution and existence may be proved by parol. A similar statement may be found in 32A C. J. S., Evidence, § 787, p. 109, where the notes list nine states which have applied this rule. Our court in *State v. Phillips,*

175 Kan. 50, 55, 259 P. 2d 185, mentioned this rule with approval in permitting oral testimony concerning the files of a university. See also 29 Am. Jur. 2d, Evidence, § 449, p. 510.

However, this does not end our inquiry for if the evidence was hearsay it does not become admissible merely because it has been reduced to writing and placed in a police file. (*City of Fort Scott v. Elliott*, 68 Kan. 805, 74 Pac. 609.) Hearsay is not limited to oral testimony or statements and the general rule which excludes hearsay as evidence applies to written, as well as oral, statements. (29 Am. Jur. 2d, Evidence, § 498, p. 556.)

It would appear proper to permit Detective Whitmill to testify in a general way that he examined such a file and as a result obtained and submitted a picture of the defendant for identification. However, the contents of the file were made up of written statements supplied by other investigators covering their factual determinations from other investigations. The truth of such written statements, if in issue, could not be shown by the testimony of Whitmill. Such testimony would violate the defendant's right of confrontation and cross-examination guaranteed by the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Constitution of the State of Kansas.

The bald statement by the prosecution that the testimony was not offered to prove the truth of the matter contained in the file does not make the contents of the file admissible. We should consider the circumstances under which this testimony was offered. One of the robbers had been referred to by his accomplice as "Slim". Whitmill was permitted to testify the file in Kansas City identified John Henry Thompson both as "Slim" and as "Crazy John". So the contents of the file were used to identify the "Slim" who robbed the jewelry store as being John Henry Thompson, and it would tend to establish guilt.

Although error was committed this does not end our inquiry. K. S. A. 60-2105 provides:

"The appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining, where it appears upon the whole record that substantial justice has been done by the judgment or order of the trial court; and in any case pending before it, the court shall render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court."

The improper admission into evidence of secondary testimony inculpating the accused may be held harmless error where it appears the testimony erroneously admitted was merely cumulative of other overwhelming eyewitness testimony identifying the accused and had little, if any, likelihood of having changed the result of the trial. (*State v. Mims*, 220 Kan. 726, 556 P. 2d 387.

In applying the Kansas harmless error rule (K. S. A. 60-2105) to a federal constitutional error a court must be able to declare the error had little, if any, likelihood of having changed the result of the trial and the court must be able to declare such a belief beyond a reasonable doubt. (*Chapman v. California*, 386 U. S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, reh. den. 386 U. S. 987, 18 L. Ed. 2d 241, 87 S. Ct. 1283; *State v. Fleury*, 203 Kan. 888, 457 P. 2d 44; *State v. Mims*, supra.)

In addition to the erroneous admission of the testimony of Whitmill concerning the contents of the file, the defendant objected strenuously to comments on this testimony made by the prosecutor in closing argument. In summation the prosecuting attorney recited events leading to Whitmill's examination of the file and stated that the "file said" the person that uses the nickname of "Crazy John" is John Henry Thompson and that Thompson is also known as "Slim". The prosecutor went on to say that this was important because it tied into the testimony of William Boyice, Jr.

Such an argument indicates the true purpose of the state in presenting the testimony. At the close of the state's summation, the defendant made a request to admonish the jury to disregard both the testimony and the argument. The matter was argued out of the hearing of the jury and the court declined. The comments of the state in its closing argument were improper. We have held that an admonition for the jury to disregard similar improper statements may cure such errors. See *State v. Watkins*, 219 Kan. 81, 547 P. 2d 810; *State v. Jones*, 218 Kan. 720, 545 P. 2d 323; and *State v. Warbritton*, 215 Kan. 534, 527 P. 2d 1050. However, this was not done.

We note in general instruction No. 11 the jury was advised:

". . . You should disregard questions which were withdrawn or to which objections were sustained. You should also disregard testimony and exhibits which the Court has refused or stricken. Remarks of counsel are not evidence and should not be considered as such."

However, such a general instruction in this case cannot be held to cure such error in the admission of specific evidence if the evidence prejudiced the accused and prevented a fair trial. See *State v. Netherton,* 128 Kan. 564, 279 Pac. 19.

The question remaining is whether this court in its collective judgment can declare that these errors had little, if any, likelihood of having changed the result of the trial. We must hold such a belief beyond a reasonable doubt.

Since the testimony was inadmissible the prosecutor's remarks thereon were improper, and the remarks would further weigh on the issue of prejudice. Misconduct on the part of a prosecutor in going outside the record or in commenting on inadmissible testimony in the heat of final argument must be so gross and flagrant as to deny the accused a fair trial in order to require a reversal. (*State v. Murrell,* 215 Kan. 10, 523 P. 2d 348; *State v. Kelley,* 209 Kan. 699, 498 P. 2d 87.) We have stated we will not require the granting of a new trial in the absence of a showing that the objectionable statements by the prosecutor were injurious to the defendant and likely to affect the jurors to his prejudice. (*State v. Norwood,* 217 Kan. 150, 535 P. 2d 996; *State v. Murrell,* supra.)

In the present case there was nothing to indicate ill will on the part of the prosecutor. His remarks were not so gross and flagrant as to deny the accused a fair trial. The trial court had ruled the testimony admissible and no objection was made to his final summation until after the case was submitted.

There was clear and convincing testimony by two eyewitnesses which identified the defendant. One witness had previous acquaintances with him including a meeting on the morning of the day on which the robberies occurred. The weight of such evidence is an important factor in determining whether the erroneous admission of other accumulative evidence is harmless error. Where the evidence of guilt is of such direct and overwhelming nature that it can be said that the erroneous admission of certain other evidence could not have affected the result of the trial, such admission is harmless error. (*State v. Fennell,* 218 Kan. 170, Syl. 2, 542 P. 2d 686.) In addition the jury in this case returned verdicts within 30 minutes after they retired to consider defendant's guilt.

Considering all the facts and circumstances surrounding this issue of identification this court is of the opinion that the testimony erroneously admitted was merely cumulative. When this testimony

and the comments of the prosecuting attorney on summation are considered they merely relate to a matter on which there was other overwhelming eyewitness testimony. There seems little, if any, likelihood that this could have changed the result of the trial. Accordingly we are able to declare the errors had little, if any, likelihood of having changed the result of the trial, and such belief is declared beyond a reasonable doubt.

For the reasons previously stated the judgment on these convictions is affirmed.