(589 P.2d 634)

No. 50,066

STATE OF KANSAS, *Appellee,* v. CHARLES DILL, *Appellant.*

68

Opinion filed January 19, 1979.

*Jan A. Way* and *Jay H. Vader* of Jenkins, Way, Turner & Vader, Chartered, of Kansas City, for the appellant.

*Glenn E. Casebeer,* assistant district attorney, *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, for the appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: The defendant appeals from a jury conviction of burglary (K.S.A. 21-3715) and felony theft (K.S.A. 21-3701).

The facts, briefly stated, are that DeGoler's Pharmacy was burglarized in the early morning hours of December 11, 1977. The property taken was $200 in cash, an assortment of drugs and a radio. The pharmacy was equipped with a silent burglar alarm system, and when the burglars entered at approximately 4:45 a.m., the alarm was set off. Police officers responding to the alarm arrived on the scene within minutes.

The first officer to arrive, Officer Foster, testified that he saw three persons running from the scene. In addition to Officer Foster, Officer Barnhart responded to the alarm. This officer was at that time investigating a possible burglary in a store located in the Indian Springs Shopping Center. As he left the store he saw an individual climbing a fence between the shopping center parking lot and I-635. The pharmacy is located directly across the street from the shopping center. Orville Street is an east-west thoroughfare just to the north of the pharmacy building and to the south of the boundary lines of the shopping center. I-635 is a north-south highway which runs along the east side of both the shopping center complex and the medical building where the pharmacy is located.

Officer Foster testified that he saw three suspects running

toward the Indian Springs Shopping Center, and as he pursued them in his car to the Indian Springs parking lot, he apprehended one of the suspects (not the defendant). He testified that he was unable to give any description of the other two by race, size, sex or clothing description and could only say that one of the two had fuzzy hair. Officer Barnhart observed only one individual running through the parking lot. He saw the person climb a fence between the shopping center parking lot and I-635. At that time he was some distance from the area where he observed the individual climbing the fence. He drove his car across the parking lot immediately, got out of his car and jumped the fence, pursuing on foot the person he saw climb the fence. Officer Barnhart testified that he never lost sight of that person from the time he saw him climbing the fence until he captured him approximately one-eighth or one-fourth of a mile away from the scene of the burglary. The individual that Barnhart caught was this defendant. The defendant, when captured, was not in possession of any fruits or instrumentalities of the crime. However, the officer testified that he observed the defendant discard some gloves near the spot where he was captured. The evidence indicated that there were no fingerprints linking this defendant to the burglary. Neither the defendant nor the other captured individual ever made any statement indicating that this defendant had participated in the burglary.

Much evidence was presented at the trial, apparently designed to show that the burglary was a professional job, that the drugs stolen were on either the state or federal controlled substances lists, and that many could be resold on the street. This testimony was elicited from the pharmacist, Mr. DeGoler, and a narcotics officer from the vice squad who further testified that the drugs stolen had not been stolen randomly, but appeared to have been carefully selected by the burglars.

The only evidence that the defendant presented in his behalf was the testimony of his wife. She testified that she and the defendant had been driving in the area of the shopping center and were on I-635 when they began arguing. She stopped the car and made him get out.

In addition to the above evidence presented at the trial and the factual situation involving this burglary and theft, two comments

made by the prosecutor are relevant to this appeal. The prosecutor made the following statement during closing arguments:

"[A]nd there never was any explanation of why the gloves were thrown away. What I am saying to you is that the defendant had an opportunity to refute the State's evidence, instead of attacking it, and they never took that opportunity to refute it.

"Mr. Way says it's difficult to prove you were not somewhere. No, it isn't, ladies and gentlemen. Mr. Tredway [the other arrested defendant] was available and he could have testified that he doesn't know Mr. Dill and that Mr. Dill wasn't up there, but the defense didn't call him. Mr. Tredway is charged with the crime by the State of Kansas and he is not our friend."

During closing arguments the prosecutor further said:

"We know what happened out there that night. Someone broke in and someone took hard narcotics. I want to parade Mr. Dill in front of you. Come up here, Mr. Dill. Take off your jacket."

The attorney for the defendant objected to the first comment on the ground that the other defendant's (Mr. Tredway) case had no relevance to this case. The objection was sustained. However, the court did not admonish the jury to disregard the statement. As to the other comments of the prosecuting attorney set forth above, the defendant's attorney made a prompt objection, which the trial court quickly sustained. The sustaining of the objection by the trial court interrupted defendant's counsel before he had stated a reason for the objection. Again, the trial judge did not admonish the jury to disregard the statement.

The defendant lists as his grounds for appeal: (1) The prosecutor's closing argument denied the defendant his constitutional right to due process by commenting on his failure to testify when he had an opportunity to refute the State's evidence concerning the gloves; (2) The prosecutor's misconduct during the closing arguments prejudiced the defendant's right to a fair trial when he endeavored to parade the defendant in front of the jury and asked him to take off his jacket; (3) The court erred in admitting evidence regarding the classifications of the drugs taken in the theft; (4) The court erred in denying the defendant's two motions for a directed verdict.

Considering these matters in reverse order, the standard to be applied by the trial judge in determining whether or not to grant a motion for acquittal is well stated in *State v. Gustin*, 212 Kan. 475, 510 P.2d 1290 (1973), at Syl. ¶ 3:

"A trial judge in passing upon a motion for judgment of acquittal must determine whether upon the evidence, giving full play to the right of the jury to

determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes guilt beyond a reasonable doubt is a fairly possible result, he must deny the motion and let the jury decide the matter. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion."

Upon review of the briefs and the record, and considering the evidence presented in this case, it does not appear that the trial court was in error in concluding that the jury might find beyond a reasonable doubt that the defendant was guilty. There was some circumstantial evidence upon which to base such a finding. The first officer was able to state with certainty that three men ran from the store toward Indian Springs Shopping Center. The second officer stated that he saw a person jump the fence at Indian Springs and that it was the same person he eventually caught. The defendant was irrefutably caught running across an interstate highway at 5:00 in the morning, and the officer testified that he saw the defendant throw a pair of gloves in the bushes just before surrendering. These facts could convince a jury beyond a reasonable doubt that the defendant did participate in the crime. Therefore, it is the opinion of this court that the trial court did not abuse its discretion in denying the defendant's two motions for a directed verdict.

We next consider the alleged error in admitting evidence regarding the classifications of the drugs taken in the theft. This alleged error is not as easily disposed of as the previous allegation of error. Here we have the defendant charged with burglary and theft, and we have testimony presented by the State through the pharmacist who owned the store and a narcotics officer as to what drugs (which were taken) were classified as controlled substances. This testimony basically was that the various drugs were controlled substances and that the classifications were based upon the addictive qualities of the drugs. The defendant objected on the basis that this was not material, and the objection was overruled by the court, even though he stated that he did not see how it would "tie in" to the burglary and theft charges.

The State argues on appeal that the classifications testimony should be admitted under the *res gestae* rule. This rule is defined in *State v. Ferris*, 222 Kan. 515, 517, 565 P.2d 275 (1977):

"Acts done or declarations made before, during or after the happening of the principal fact may be admissible as part of the *res gestae* where they are so closely

connected with it as to form in reality a part of the occurrence. [Citations omitted.] Evidence that does not constitute a portion of the crimes charged is admissible if there [are] some natural, necessary or logical connections between them and the inference or result which they are designed to establish. [Citations omitted.]"

This particular evidence does not fit within the definition as set forth in *Ferris,* for it is not an act or declaration, nor does it form a part of the events surrounding the burglary and theft.

The State argues that this testimony was necessary to prove that more than one person participated in the burglary. The State further argues that since the police arrived within a few minutes after entrance was gained, more than one person must have been collecting the drugs because of the quantity stolen and the selective nature of the thieves' choice.

In *State v. Baker,* 219 Kan. 854, 549 P.2d 911 (1976), a good summary of the rules and standards relating to relevancy is set forth. The Court defined "relevancy" in this manner:

" '[R]elevancy [is] a matter of logic and experience and not of law. . . . If an item of evidence tends to prove or disprove a proposition, it is relevant to that proposition. . . .' Slough, *Relevancy Unraveled,* 5 Kan. L.Rev. 1 (1956). The standard of relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. 1 Jones on Evidence § 4:1 (6th ed. 1972)." p. 858.

Other significant rules relating to relevancy which are discussed in *Baker* include the following: (1) "Relevancy" does not necessarily mean that the evidence bears directly on the case; (2) Decisions relating to admissibility rest largely within the discretion of the trial court; (3) If the probative value of relevant evidence is outweighed by the danger that the jury might be unduly prejudiced by it, it should be excluded.

Applying these standards to the evidence in question, it appears that the trial court did not abuse its discretion in admitting the testimony regarding the classifications of the drugs stolen, even though the appellant argues that the real purpose for introducing the evidence was to create an impression in the jury's mind that the thieves were hardened drug users or pushers. This testimony appears to be relevant to establish the items that were removed from the store during the burglary and theft, and could have been admitted and used for the purpose of identifying those drugs as being the same as were found abandoned along the paths of the thieves' escape from the scene of the crime, and establishing that the taking of only these types of drugs in such a short

period of time would have to have been done by more than one person. Even though this testimony was not vitally important to prove the State's case, when viewed in light of all of the other evidence presented as to the number of people involved in the offense, it is sufficiently relevant to justify the admission of the same over objections of the defense counsel, and will not be considered as a ground for reversal.

Finally, we come to the alleged points of error which arose out of the prosecutor's comments during rebuttal closing argument. The content of these objections to portions of the argument have been previously set forth in this opinion. The defendant alleges that the prosecutor's comment concerning the defendant's failure to refute the State's evidence about the gloves resulted in a denial of due process to him. He also argues that the State's request that the defendant stand up and take off his jacket in the presence of the jury was done solely for the purpose of prejudicing the jury against the defendant by portraying him as a drug user.

The impropriety of the statement calling the jury's attention to the defendant's failure to testify is unquestionable. The United States Supreme Court held in 1965 that a comment on an accused's failure to testify on his own behalf is impermissible because it makes the exercise of the fifth amendment rights too costly. *Griffin v. California,* 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229, *reh. denied* 381 U.S. 957, 14 L.Ed.2d 730, 85 S.Ct. 1797 (1965). Many Kansas cases recognize the *Griffin* rule, including *State v. Reeves,* 224 Kan. 90, 577 P.2d 1175 (1978), and *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374 (1977).

Cases after *Griffin* establish that a violation of the *Griffin* rule does not constitute prejudice per se. In *Chapman v. California,* 386 U.S. 18, 17 L.Ed.2d 705, 87 S.Ct. 824, *reh. denied* 386 U.S. 987, 18 L.Ed.2d 241, 87 S.Ct. 1283 (1967), the court formulated the standard by which the error is to be judged: "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was *harmless beyond a reasonable doubt.*" (p. 24, emphasis added.) The court implied that in applying this standard to *Griffin*-type errors, a court should be able to answer in the negative the following questions: (1) Is there a possibility that the error contributed to the conviction? (2) Is it possible that the jury would have acquitted the defendant without the comment? The court also noted that the burden of proving

that no prejudice resulted rests on the party which benefited by the error, which would be the State in this case. It appears that under the factual situation of this case, it would be impossible to answer these questions negatively.

Kansas follows the *Chapman* harmless error rule. *State v. Reeves,* 224 Kan. at 93. In applying the *Chapman* standards for prejudice one of the important factors to be considered is the quantum of evidence presented against the defendant. In *State v. Hamilton,* 222 Kan. 341, 564 P.2d 536 (1977), the Kansas Supreme Court held that the overwhelming nature of the evidence against the defendant indicated that the prosecutor's comment calling the jury's attention to the defendant's post-*Miranda* silence was harmless error. In the case at hand, the evidence against the defendant cannot be held to be overwhelming. In fact, it was rather scant. There was nothing to link him to the burglary except the testimony of Officer Barnhart who stated that he saw a person leap the fence and run toward I-635, and the testimony of Officer Foster indicating that one of the suspects had fuzzy hair. Although Officer Barnhart testified that he kept the defendant in sight continually, the jury might have chosen to disbelieve this testimony, for Officer Barnhart testified that he saw a person jump the fence as he was coming out of Ward's store in Indian Springs Shopping Center. Then he got into his car and drove to the fence, jumped over it himself, and gave chase. The chase lasted a distance of approximately one-eighth to one-fourth of a mile. The jury might well have decided that the officer lost sight of the person who jumped the fence while he was getting in the car and that the officer was mistaken in his belief that the defendant was the same individual.

Other factors to be considered as set forth in *Griffin,* 380 U.S. 609, in determining whether the prosecutor's comments were prejudicial are the pervasiveness of the comments, and whether or not the comments were flagrant, deliberate violations of the *Griffin* rule. See also *State v. Reeves,* 224 Kan. 90. Examination of the record does not indicate positively that either of these factors are present in the case at hand.

The State argues that the defendant should not be heard to object to the comment because he did not make an objection at the trial. The record indicates that the defendant did object, though on different grounds. His objection was that Mr. Tredway's case

had no relevance to his own. The court sustained the objection, but did not admonish the jury to disregard the statement. Failure to make timely, specific objections stating the constitutional grounds may in fact preclude this court from basing reversal on this ground. However, when one views the transcript of the proceedings, it indicates that we are dealing with the prosecutor's closing rebuttal argument, and the basic gist of the prosecutor's argument was that the defendant had an opportunity to refute the testimony of the State that he had thrown away the gloves he was wearing by the use of Mr. Tredway's testimony in this matter. The objection as specifically lodged was as to any further comments concerning Mr. Tredway's possible testimony. However, the objection was made particularly to the improper comments made by the prosecutor concerning defendant's failure to testify and refute the State's evidence regarding the gloves. Mr. Tredway's possible testimony was merely a means of refuting that testimony, and the true objection went to the basic problem of calling the attention of the jury to the fact that the defendant did not testify. With the objection being sustained almost immediately by the court, counsel for the defendant did not really have the opportunity to fully complete his objection and the grounds therefor. So it is not absolutely certain that the objection was not made on the constitutional ground of due process.

The final allegation of error for this court to consider is the prosecutor's request that the defendant remove his jacket before the jury. This comment was highly prejudicial. It can only be seen as an attempt on the prosecutor's part to create in the minds of the jurors the impression that the defendant was addicted to drugs, even though there had been no evidence of his drug addiction.

The test for determining whether prosecutorial misconduct constitutes reversible error is stated in *State v. Thompson*, 221 Kan. 176, 183, 558 P.2d 93 (1976):

"The question remaining is whether this court in its collective judgment can declare that these errors had little, if any, likelihood of having changed the result of the trial."

The *Thompson* court listed several factors that should be weighed by the reviewing court in applying the test: (1) Is the misconduct so gross and flagrant as to deny the accused a fair trial (*i.e.,* are the objectionable statements likely to affect the jurors to

the defendant's prejudice)? (2) Do the remarks show ill will on the prosecutor's part? (3) Is the evidence against the defendant of such a direct and overwhelming nature that it can be said that the prejudicial remarks of the prosecutor were likely to have little weight in the minds of the jurors?

Applying the *Thompson* test to the facts of this case, the prosecutor's action here is grounds for reversal. It could properly be classed as "gross and flagrant." Even an inexperienced prosecutor knows that creating innuendoes about narcotics addiction is irrelevant and improper, especially in a trial for theft. The evidence against the defendant is not of a direct and overwhelming nature, and these comments were probably meant to impassion and inflame the jury, heightening the chances for conviction. It should be pointed out that the comment was particularly invidious, because the fact that Mr. Dill did not take off his jacket probably left the jury with the impression that he did in fact have needle marks on his arms.

The conviction must be reversed and the case remanded for a new trial, for this court is unable to declare beyond a reasonable doubt that the defendant would have been convicted without the prejudicial misconduct of the prosecutor in calling the jury's attention to the defendant's failure to testify and his supposed drug addiction. While the admission of the evidence concerning the addictive qualities of the stolen drugs does not in and of itself constitute error, we think that the cumulative effect of this evidence and the prejudicial comments were to invite the jury to convict the defendant because of his purported involvement with narcotic drugs, not because the evidence showed beyond a reasonable doubt that the defendant was guilty of burglary and theft.

The judgment is reversed and the case is remanded for a new trial.