(613 P.2d 966)
No. 51,744

STATE OF KANSAS, *Appellee*, v. EUGENE P. CARPENTER, *Appellant.*

Opinion filed July 18, 1980.

*Hugh R. McCullough,* of Topeka, for the appellant.

*Douglas C. Beach,* legal intern, *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, for the appellee.

Before FOTH, C.J., SPENCER and SWINEHART, JJ.

SWINEHART, J.: Defendant Eugene P. Carpenter appeals from a jury conviction of one count of obstructing legal process or official duty in violation of K.S.A. 21-3808.

The defendant raises two questions on appeal: (1) whether the prosecutor committed prejudicial misconduct in his closing argument; and (2) whether there was sufficient evidence for the jury

to find the defendant guilty of obstructing legal process or official duty.

At approximately 10:45 p.m. on April 21, 1979, Scott Holladay, a Shawnee County deputy sheriff, observed a red Ford Pinto on the shoulder of the access entrance ramp of South 75 Highway going to westbound I-470. Holladay pulled over behind the car to check the vehicle, which appeared to be abandoned. He radioed the license tag number to his dispatcher who responded that the automobile was registered to the defendant Eugene Carpenter. The dispatcher also advised Holladay that there were several outstanding traffic warrants for defendant's arrest.

Shortly thereafter, the defendant approached the vehicle with a container of gasoline. The deputy asked the defendant whether the car belonged to him, and the defendant answered that it did. The deputy then asked the defendant for some identification, but the defendant refused in a hostile and defensive manner, according to Holladay. Holladay made several additional requests for identification, but when the defendant asked him why he wanted the information, Holladay only responded he wanted to see identification. Due to the defendant's refusal to comply with Holladay's request, the deputy called for a backup unit to assist him. During this period of time, the defendant continued to try to fill his gasoline tank.

After requesting a backup unit, Holladay again asked the defendant for identification and the defendant showed him his driver's license. The two conversed for a few moments until the backup unit, consisting of Sgt. Danny Bryan and reserve officer Thomas Royer, arrived at the scene. The three officers conferred for a few moments while the defendant continued to pour gasoline into the tank, and they then approached the defendant. Holladay testified that at that point the defendant was informed that he was under arrest for two active traffic warrants. The defendant told the deputies that those warrants had already been taken care of and proceeded to enter his car and tried to start it. After the officers heard the defendant attempt to start his car, they went to the driver's side of the vehicle. Royer asked the defendant not to start the car and the defendant allegedly replied, "Fuck you." Royer then ordered the defendant to exit from the car. Instead, he attempted to roll up the car window and lock the door. However, Royer was able to unlock the door and open it. At first

defendant refused to leave the car, but after a few moments he asked whether the request to do so was a lawful police order. When informed that it was, the defendant got out of the car. A scuffle involving all four men ensued when the defendant turned around to face Officer Holladay, because the defendant became hostile and resisted arrest. Finally, the defendant was handcuffed, calmed down, and in fact cooperated with the officers.

Both Royer and Holladay testified that the entire incident with the defendant took only several minutes longer than a normal arrest due to the defendant's actions. Further, the State stipulated that the defendant might have sustained several bruises as a result of the scuffle between him and the officers when he was pushed against his car.

The defendant testified, and admitted that he was drunk at the time the arrest was made. He claims he was not informed that he was being arrested for outstanding traffic violations until after he was handcuffed and beaten by the authorities who instigated the short struggle.

As a result of this encounter, the defendant was charged with one count of obstructing legal process or official duty in violation of K.S.A. 21-3808 and one count of battery against a law enforcement officer in violation of K.S.A. 21-3413. Prior to trial on August 1, 1979, the State was ordered to confine its proof on the obstruction charge to the defendant's acts of refusing to give identification and of trying to start his car in an apparent attempt to leave the scene. At the close of the State's evidence, the battery charge was dismissed.

During the rebuttal portion of the State's closing argument, the prosecutor stated that the defendant's acts of entering his car and attempting to start it were not the acts of an innocent person but rather of one attempting to flee. At that point the defendant's counsel objected, arguing that there was no evidence of any attempt to flee. In response, the prosecutor remarked that in chambers the defense counsel had assumed that defendant was attempting to flee. A discussion then followed outside of the hearing of the jury and defense counsel moved for a mistrial on the ground that it was improper to reveal any conversation held in chambers. Although the trial judge agreed that alluding to an in camera discussion was improper, he declined to declare a mistrial. However, the court sustained the defendant's objections

regarding the prosecutor's in camera comments and admonished the jury to disregard them.

The defendant contends that prejudicial error requiring reversal occurred during the following portion of the closing argument of the prosecutor.

"MR. BEACH [the prosecutor]: The defendant got in his car, attempted to drive away, attempted to start it in doing so. Those aren't the actions of an innocent person, those are the actions of a person that is afraid they are getting caught for something and they are trying to get away; and that's indeed what the defendant was doing that night.

"MR. McCULLOUGH: Object, your Honor. I would ask that that be stricken and the jury admonished. I don't think there is any evidence of attempt to flee. I think that's totally improper.

"MR. BEACH: Defense counsel stated on record in chambers that he assumed the defendant was attempting to flee earlier this morning, your Honor.

"THE COURT: Well, I think the—(Interrupted)

"MR. McCULLOUGH: Judge, let me approach the Bench. (The following proceedings were heard at the Bench out of the hearing of the jury.)

"THE COURT: You know—Go ahead.

"MR. McCULLOUGH: I move for a mistrial.

"THE COURT: What about?

"MR. McCULLOUGH: Well, you can't go on the record and start talking about what defense counsel admitted in Chambers and all this, Judge, that's improper."

The trial court declined to declare a mistrial, but did admonish the jury as follows:

"Okay, I sustain defendant's objections to the remarks by the prosecutor about comments in Chambers and the jury should disregard those."

Although defendant's initial objection concerned the defendant's alleged attempts to flee from the scene, the main thrust of his argument is that the prosecutor fatally erred by referring to comments made in chambers by defense counsel. He claims that despite the admonishment by the trial court, the jury was undoubtedly prejudiced against the defendant upon hearing the remarks.

While the prosecutor is afforded considerable latitude when arguing a case before a jury, *State v. Robinson,* 219 Kan. 218, 547 P.2d 335 (1976), there is no more fundamental rule concerning oral argument than the one which requires counsel to limit their remarks to matters in evidence. Presenting facts not received into evidence is patently improper. *State v. Bradford,* 219 Kan. 336, 340, 548 P.2d 812 (1976). As the defendant's attorney never

testified that he believed that the defendant was trying to flee, the prosecutor improperly interjected new evidence into the proceedings via closing argument.

Despite the impropriety of the prosecutor's remarks, however, such misconduct requires reversal only when it is "so gross and flagrant as to deny the accused a fair trial." A new trial will only be granted when there is a showing that the objectionable statements made by the prosecutor injured the defendant and were likely to prejudice the jurors against him. *State v. Thompson,* 221 Kan. 176, 183, 558 P.2d 93 (1976).

*State v. Dill,* 3 Kan. App. 2d 67, 589 P.2d 634 (1979), commented upon the significance of prosecutorial misconduct as follows:

"The test for determining whether prosecutorial misconduct constitutes reversible error is stated in *State v. Thompson,* 221 Kan. 176, 183, 558 P.2d 93 (1976):

" 'The question remaining is whether this court in its collective judgment can declare that these errors had little, if any, likelihood of having changed the result of the trial.'

"The *Thompson* court listed several factors that should be weighed by the reviewing court in applying the test: (1) Is the misconduct so gross and flagrant as to deny the accused a fair trial (*i.e.,* are the objectionable statements likely to affect the jurors to the defendant's prejudice)? (2) Do the remarks show ill will on the prosecutor's part? (3) Is the evidence against the defendant of such a direct and overwhelming nature that it can be said that the prejudicial remarks of the prosecutor were likely to have little weight in the minds of the jurors?" pp. 75-76.

There is no showing that the statement evidenced ill will on the part of the prosecutor. The case was tried by a legal intern who told the court that he thought the remarks of the defense counsel were made on the record and, therefore, he could repeat them before the jury. Despite his inexperience, the prosecutor should have known that he was not to repeat statements made in chambers, even if there was no showing of ill will on his part.

The unique aspect of this case, however, is how that reference to the discussion in chambers affected the jury, even though there was other evidence suggesting flight. While the "flight" evidence might be cumulative, the critical factor is that the defendant's own attorney was the source of that belief. The defense counsel's remarks could be perceived to reflect his opinion that the defendant was guilty of the crime charged or that he at least committed one action that would establish an element necessary to prove that crime, *i.e.,* an attempt to flee could be deemed an act

of obstructing or resisting official duty. Furthermore, this information may have been given inordinate significance because the case against the defendant on the obstruction charge was less than compelling. Without a doubt this misconduct could have prejudiced the jury against the defendant and denied him a fair trial.

Courts generally, although not uniformly, have found that it is improper for a prosecutor in a criminal jury trial to speculate in oral argument about the supposed beliefs of the defendant's attorney with respect to defendant's guilt or innocence. The determination turns upon the prejudicial effect that such argument is deemed to have had. Relevant considerations include whether the trial court admonished the jury; the number of improprieties made by the prosecution during the argument; the intent of the prosecutor, *i.e.*, was the remark willful or inadvertent; the strength of the other incriminating evidence against the accused. Annot., 89 A.L.R.3d 263. It is obvious that the factors which courts have used in these situations either duplicate or complement those that the Kansas courts have traditionally used for other types of prosecutorial misconduct in oral argument. Consequently, even though the statement under scrutiny might not be read to explicitly inform the jury that the defense counsel believed the defendant guilty, the inference is such that the same considerations should be applied in this case.

We find that the closing remark of the prosecutor concerning the in camera discussion constitutes reversible error. The guilty verdict is set aside and a new trial is ordered.