(635 P.2d 972)

No. 52,702

STATE OF KANSAS, *Appellee,* v. MARK W. CROFT, *Appellant.*

Opinion filed November 13, 1981.

*Paul J. Mohr,* of Matlack, Foote, Scott, Joseph & Wilkinson, P.A., of Wichita, for the appellant.

*Cristine D. Senseman,* assistant attorney general, *Jack Peggs,* assistant district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. McLAUGHLIN, District Judge Retired, assigned.

HERD, J.: This is an appeal from a conviction for criminal damage to property. K.S.A. 1980 Supp. 21-3720.

During the early morning hours of July 8, 1980, Detective Jack Leon was staking out a commercial area in Wichita. Shortly after 1:00 a.m. he observed a black and red Oldsmobile pull up to the teller's window at the Fidelity Savings & Loan. A white male with blond curly hair and no shirt exited the car and broke a window in the building. Detective Leon reported this but told the dispatcher not to broadcast an alarm for fear the culprits had a radio scanner in the car and would be alerted to police activity.

The Oldsmobile drove away, but then returned to the area twenty to thirty minutes later.

Twenty to thirty minutes after the Oldsmobile left for the second time a blue Chevrolet Monza began driving in the area of Detective Leon's stakeout. The Monza appeared to be circling the area. At this time Detective Leon broadcast a description of the vehicle to other officers stationed in the area over a radio channel not readily picked up by a scanner. Later the police decided the stakeout had been discovered because the persons in the blue Monza had seen a marked police unit. The vehicle was then stopped because Detective Leon "thought it was suspicious and involved in at least the vandalism if not a burglary." It was now approximately 4:00 a.m.

As the Monza was being stopped, the police officer observed the passenger in the front seat "bend down in the seat as if he was attempting to hide something." The occupants immediately got out and the officer ordered them to stay near the car. Back-up police officers then arrived and were told to check the front seat of the Monza for weapons. During this search the officer noticed the front floor mat was "all bunched up like something was underneath it." That "something" was a radio scanner.

The appellant, Mark Croft, was driving the Monza. He was placed under arrest at the scene for having no driver's license. Detective Leon later arrived and advised the officers Mark Croft was the person he had seen break the window at the Savings and Loan. The appellant was then charged with violating K.S.A. 1980 Supp. 21-3720, the criminal damage to property statute. A red and black Oldsmobile was later found parked across the street from appellant's house. It was registered to Don Burrell, father of the passenger in the blue Monza.

On September 19, 1980, a hearing was held on appellant's motion to suppress the radio scanner. Judge Hodge denied the motion.

Prior to trial, appellant filed a motion in limine. Pursuant to that motion Judge Klein ruled that evidence regarding drug paraphernalia found in a post-arrest search of the black and red Oldsmobile should be excluded. In response to a proper question at trial Detective Leon volunteered information about the paraphernalia. Appellant then moved for a mistrial and Judge Klein denied the motion.

During trial the prosecutor referred to pictures of the Savings and Loan building introduced into evidence by appellant as being "altered." There was no direct evidence the pictures were in fact altered.

On October 2, 1980, the jury returned a verdict of guilty. The judge denied appellant's motion for new trial and pronounced the sentence. Croft appealed.

Appellant claims the radio scanner seized from his car should have been suppressed because it was the product of an unreasonable search and seizure. Generally, searches and seizures without a warrant are unreasonable. This rule is, however, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 19 L.Ed.2d 576, 88 S.Ct. 507 (1967). See also *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55, 29 L.Ed.2d 564, 91 S.Ct. 2022, *reh. denied* 404 U.S. 874 (1971); *State v. Sanders,* 5 Kan. App. 2d 189, 195, 614 P.2d 998 (1980). One of these exceptions is for the search incident to a lawful arrest. Appellant concedes he was arrested for having no driver's license in his possession. The critical question, he feels, is whether the search was sufficiently limited in scope to be justified. That question was recently answered by the U.S. Supreme Court in *New York v. Belton,* 453 U.S. ____, ____, 69 L.Ed.2d 768, 775, 101 S.Ct. 2860 (1981). There it was held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."

The appellant was lawfully arrested. The scanner was found in the passenger compartment. Under the *Belton* rule the search was proper.

Appellant next contends a mistrial should have been declared because of the spontaneous remarks of Detective Leon regarding the drug paraphernalia. At trial the judge struck the entire answer containing these remarks and admonished the jury to disregard it. The general rule is that an admonition to the jury normally cures any prejudice from an improper admission of evidence. *State v. McGhee,* 226 Kan. 698, 702, 602 P.2d 1339 (1979); *State v. Mims,* 222 Kan. 335, 336-37, 564 P.2d 531 (1977). Further, whether to declare a mistrial is largely in the discretion of the judge. A clear showing of abuse of discretion must be made before the decision

of the trial court will be set aside on appeal. *State v. McGhee,* 226 Kan. at 702. There was no such showing in the present case.

Appellant argues remarks by the prosecutor during closing argument concerning pictures introduced by appellant constitute reversible error. Referring to the pictures the prosecutor said, "So you have the pictures. They're altered pictures."

"No rule governing oral argument is more fundamental than that requiring counsel to confine their remarks to matters *in evidence.*" (Court's emphasis.) *State v. Bradford,* 219 Kan. 336, 340, 548 P.2d 812 (1976). Although objection should be made to such improper argument, "[w]here counsel refers to pertinent facts not before the jury, or appeals to prejudices foreign to the case, it is the duty of the court to stop him then and there. The court need not and ought not to wait to hear objection from opposing counsel." *State v. Gutekunst,* 24 Kan. 252, 254 (1880). See also *State v. Kelley,* 209 Kan. 699, 705, 498 P.2d 87 (1972); *State v. Wilson,* 188 Kan. 67, 73, 360 P.2d 1092 (1961).

The prosecutor's remarks here were outside the evidence and should not have been allowed. The question is, however, whether the remarks were so prejudicial as to deny defendant a fair trial. *State v. Bradford,* 219 Kan. at 340. In *State v. Thompson,* 221 Kan. 176, 183, 558 P.2d 93 (1976), the court stated the issue was "whether this court in its collective judgment can declare that these errors had little, if any, likelihood of having changed the result of the trial." In *State v. Dill,* 3 Kan. App. 2d 67, 75-76, 589 P.2d 634 (1979), the court stated the factors to be weighed by this court in applying the test.

"(1) Is the misconduct so gross and flagrant as to deny the accused a fair trial (*i.e.,* are the objectionable statements likely to affect the jurors to the defendant's prejudice)? (2) Do the remarks show ill will on the prosecutor's part? (3) Is the evidence against the defendant of such a direct and overwhelming nature that it can be said that the prejudicial remarks of the prosecutor were likely to have little weight in the minds of the jurors?"

Although the remarks by the prosecutor were clearly improper they showed no ill will on his part. The jurors might have made the inference the pictures were altered anyway. In this sense the remarks likely had little weight in the minds of the jurors. In short, the misconduct was not so gross and flagrant as to deny the accused a fair trial.

Appellant's final contention is that the evidence was insufficient to find the defendant guilty beyond a reasonable doubt.

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt? *State v. McGhee,* 226 Kan. 698, 602 P.2d 1339 (1979); *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979). In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence in favor of the verdict, it does not weigh the evidence and if the essential elements of the charge are sustained by any competent evidence the conviction must stand. *State v. Racey,* 225 Kan. 404, Syl. ¶ 3, 590 P.2d 1064 (1979)." *State v. Peoples,* 227 Kan. 127, 133, 605 P.2d 135 (1980).

See also *State v. Everson,* 229 Kan. 540, 542, 626 P.2d 1189 (1981).

We have carefully considered the evidence in favor of the verdict. Although not overwhelming, it is sufficient. We will not second-guess the jury's belief or disbelief of any witness.

The judgment of the trial court is affirmed.