UNITED STATES of America, Plaintiff-Appellee,

v.

Wilfred Delano MARQUEZ, Defendant-Appellant.

No. 81–1976.

United States Court of Appeals, Tenth Circuit.

Aug. 27, 1982.

Roger A. Finzel, Albuquerque, N. M., for defendant-appellant.

Stanley K. Kotovsky, Asst. U. S. Atty., Albuquerque, N. M. (Don J. Svet, U. S. Atty., and Richard J. Smith, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendant here appeals his jury conviction for violating 18 U.S.C. App. § 1202(a), possession of a firearm by a convicted felon. Marquez received a two year sentence.

On May 7, 1981, the defendant was driving his sister's car, with her permission, when he picked up two hitchhikers, Pete Baca and Vivian Chavez, whose car had broken down. As the defendant was taking Baca and Chavez home at approximately 11:00 p. m. he was stopped by Officer Marler of the Albuquerque Police Department for a broken rear tail light.

When Officer Marler approached the vehicle with his flashlight, he noticed that the car license plate tag had been bent back over itself to obscure the numbers on the plate. Upon request of Officer Marler, the defendant produced a valid Colorado driver's license. During this interlude Marler shined his flashlight into the vehicle and noticed two barrels of a double barrelled shotgun protruding from an olive green fatigue type jacket on the floorboard under the defendant's legs. Marler also noticed an open can of beer near the shotgun. Marquez turned the can of beer over to Marler upon request. At that point the officer returned to his patrol car and using a non-emergency code called for assistance.

Officer Kemp arrived as a back-up and both officers then approached the vehicle. They removed all three occupants from the vehicle and patted them down for weapons. Officer Kemp then removed the jacket and the shotgun from the car.

Upon inspection, Officer Marler noted that the defendant's Colorado driver's license was a duplicate. On the Social Security card presented by Marquez the number had been erased and replaced. In looking through the defendant's wallet for other identification, Officer Marler found a newspaper clipping about an armed robbery in Colorado that involved Marquez. The article made no mention of any conviction of Marquez for that or any other crime.

On the basis of the two violations, a broken rear tail light and carrying the open liquor container, along with questionable identification and the fact that the vehicle the defendant was driving was registered to someone other than the defendant, Marquez was arrested. Marler testified that on these facts he would routinely take a driver into custody and require the posting of bond on the two violations.

The shotgun had two rounds of ammunition in it and appeared to the officers to have been "sawed off." They were unsure at the time of the precise length of this weapon and the precise limits of legality for a weapon of this type. The barrel of the weapon was later determined to be just over 18 inches in length and the overall length of the shotgun was 28 and one-half inches in length. Thus it was a legal weapon, one not required to be registered under federal law.

Officer Marler was aware that federal law prohibited a convicted felon or any person under indictment for a felony from possessing a firearm under any circumstances. From the information Marler gained from the newspaper clipping he had reason to believe that the defendant had been charged with the crime of armed robbery in Colorado. However, at the time of this incident no state or municipal law in New Mexico made it a crime to carry a weapon in a vehicle, loaded or unloaded.

After his arrest it was discovered that the defendant had been convicted of a felony, the crime of bail jumping. Subsequently he was charged with violation of 18 U.S.C. App. 1202(a), unlawful possession of a firearm in interstate commerce.

The defendant seeks a reversal of his conviction on two grounds. First, that his motion to suppress evidence of the shotgun was erroneously denied by the trial court and second, that the trial court erred in refusing to continue the case or declare a mistrial when a witness, Pete Baca, who had been subpoenaed by the government, could not be located to testify at trial.

## SUPPRESSION OF THE EVIDENCE

The defendant contends that the officers had no grounds upon which to seize the shotgun from the vehicle since it was being carried in a legal manner under state and local law; it was not to their knowledge either contraband or evidence of a crime, and there is no indication that either officer felt he was in danger at any time during the incident.

Appellant admits that the search of the vehicle did not violate his constitutional rights. Rather, he contests only the authority of the police to *seize* the weapon under the circumstances.

The above contention must be rejected in light of the law of search and seizure incident to a lawful arrest. Beginning with *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) the Supreme Court determined that a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the area immediately surrounding the arrestee. This exception to the warrant requirement is justified by the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence. *Id.* at 763, 89 S.Ct. at 2040. "Every arrest must be presumed to present a risk of danger to the arresting officer. *Cf. United States v. Robinson*, 414 U.S. 218, 234 n. 5, 94 S.Ct. 467, 476 n. 5, 38 L.Ed.2d 427 (1974). There is no way for an officer to predict reliably how a particular subject will react to arrest or the degree of potential danger." *Washington v. Chrisman*, 455 U.S. 1, 7, 102 S.Ct. 812, 817, 70 L.Ed.2d 778 (1982).

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Court, in applying the *Chimel* principle to automobile searches, said: "[W]e hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864. In *Belton* there was no question that the defendant was the subject of a lawful custodial arrest on a charge of possessing marijuana. Here the appellant does not challenge the validity of his arrest for the tail light and open container violations. Therefore once the appellant was under arrest, the officers were proceeding properly in searching the car and removing the shotgun. The rationale enunciated in *Chimel* existed in this case as well. The

331

appellant had two companions in the car with him who could have used the shotgun to try to secure the appellant's escape and they also could have driven off with the automobile, removing the gun so as to destroy evidence of a crime. Officers Marler and Kemp could have reasonably suspected either or both of these alternatives and therefore seized the weapon in order to guard against any such possibility.

To argue, as the defendant does, that the officers could legally stop and search the car for weapons and contraband, but that once these items were discovered they were not subject to seizure is ridiculous. The officer's safety is not protected by simply knowing that the arrestee's companions are armed. The officer must seize the weapon to remove the danger to himself, as well as thwart any attempted escape.

■ The appellant, in trying to make a distinction between the authority of the officers to search the vehicle and their authority to seize the shotgun focuses on the "plain view" doctrine. The "plain view" exception to the Fourth Amendment's warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Appellant argues that since the shotgun was neither contraband nor evidence of any crime that it was not subject to seizure under the "plain view" doctrine.

■ Even if the court were to apply the "plain view" doctrine to this case, the seizure must be ruled legal under the circumstances. The authority of the officers to stop and search the car has not been challenged so we start with the premise that a lawful search was in progress at the time the shotgun was seized. Since carrying a loaded weapon was perfectly legal in New Mexico, the only question is whether the shotgun was incriminating evidence. At the time the shotgun was seized Officer Marler had reason to believe that the appellant was under indictment for an armed robbery in Colorado, the result of which

caused the shotgun to be illegal. An officer is not required to know with absolute certainty that all elements of a putative crime have been completed when he seizes an article which reasonably appears to be incriminating evidence. *United States v. Duckett*, 583 F.2d 1309, 1314 (5th Cir. 1978). Thus, the shotgun could have been viewed by Officer Marler as evidence of a violation of 18 U.S.C. App. § 1202(a). So, even when viewed from the perspective of the "plain view" doctrine, the shotgun was subject to seizure. No error was committed by the trial court in admitting this weapon as evidence.

## THE REFUSAL TO GRANT A CONTINUANCE OR DECLARE A MISTRIAL

On the day of trial the government announced that although it had served a subpoena on Mr. Pete Baca approximately six weeks prior to trial, he could not now be located and would probably not appear for trial. The United States Attorney then indicated his intention to offer Baca's signed statement into evidence if the defense tried to prove that the shotgun in question belonged to Baca and not Marquez. Defense counsel requested a continuance to try and locate Baca. The request for a continuance was denied. At the close of the trial when Baca could still not be located, the defendant moved for a mistrial because of the unavailability of the witness. This was denied. Baca's signed statement was included in the record; it was not read by the jury.

The defendant contends that Baca was a critical witness, who had been subpoenaed by the government and his failure to appear at trial seriously damaged his defense. Upon cross-examination of this witness the defendant hoped to discredit or impeach Baca or have him provide additional information about the shotgun seized from the front seat of the vehicle in which he was riding. In his statement made to an agent of the Bureau of Alcohol, Tobacco and Firearms on June 1st, 1981, Baca denies any knowledge of the shotgun until it was removed from the car by Officer Marler.

Baca stated that the gun did not belong to the other passenger Vivian Chavez or to him. The defendant maintains that he was denied the opportunity to challenge this statement because the government did not make a good faith effort to locate the witness, and that his sixth amendment rights were violated.

We conclude that the absence of Baca as a witness at the trial was not grounds for either a continuance or a mistrial. A critical factor is that the defendant made no attempt to secure Baca's attendance at trial. Baca had been subpoenaed as a government witness whose testimony was likely to be adverse to the defendant's case. There is absolutely no evidence that his testimony would have been of any help to the defendant. Moreover, his statement was not before the jury and was not a piece of the evidence upon which the jury convicted the defendant.

This is not a case in which the trial court abused its discretion in denying defense requests for subpoenas or where the government failed to make a good faith effort to locate witnesses subpoenaed by the defense, a condition which was present in *United States v. Barker*, 553 F.2d 1013 (6th Cir. 1977).

The decision to grant a continuance or a mistrial is committed to the discretion of the trial court and is not to be disturbed in the absence of a showing of an abuse of that discretion. *United States v. Harris*, 441 F.2d 1333 (10th Cir. 1971); *United States v. Gonzales-Palma*, 645 F.2d 844, *cert. denied*, 454 U.S. 869, 102 S.Ct. 335, 70 L.Ed.2d 172 (1981); *United States v. Williams*, 605 F.2d 495, *cert. denied*, 444 U.S. 932, 100 S.Ct. 276, 62 L.Ed.2d 189 (1979). There was no abuse of discretion in this case arising from the failure to grant a continuance or subsequently a mistrial on the sole ground that one witness, hostile to the defendant, could not be located to testify at trial. The defendant could not produce any evidence to indicate that Baca's testimony would have changed at all on the stand from his signed statement. From all indications Baca's testimony would have been consistent with the testimony of Vivian Chavez, which was incriminating to the defendant.

The defendant was clearly given a fair trial.

The judgment is affirmed.