(685 P.2d 887)

No. 55,621

STATE OF KANSAS, *Appellant,* v. RANDALL J. PRESS, *Appellee.*

Petition for review denied October 2, 1984.

Opinion filed July 12, 1984.

*Willis K. Musick,* assistant county attorney, and *Robert T. Stephan,* attorney general, for the appellant.

*Caleb Boone,* of Law Office of Thomas C. Boone, of Hays, for the appellee.

Before PARKS, P.J., REES and SWINEHART, JJ.

SWINEHART, J.: This is an interlocutory appeal by the State from the trial court's pretrial suppression of evidence obtained in an illegal search of defendant's vehicle after his arrest for violation of K.S.A. 1983 Supp. 8-1567 — DUI misdemeanor.

Defendant Randall J. Press was arrested by highway patrol trooper Daniel Alltop at the intersection of Cody and Vine Streets in Hays, Kansas, at about 10:50 p.m. on March 8, 1983. Trooper Alltop observed the vehicle defendant was driving on Vine Street, a four-lane road with a center turn lane, weaving

into the center turn lane several times and the outside lane once. No turn signals were given prior to these lane changes. Trooper Alltop also observed defendant's vehicle stop at the intersection of 22nd and Vine Streets for a stoplight which was green for defendant's lane of travel.

Trooper Alltop stopped defendant's vehicle. Defendant was asked to and did perform field sobriety tests, including the heel-to-toe test, the finger-to-nose test, and a test consisting of leaning back with the head tilted back to test balance. These tests revealed that defendant was unsure, swaying, and almost lost his balance while performing the heel-to-toe walking test. Defendant touched the bridge of his nose rather than the tip as requested by Trooper Alltop on the hand-to-nose test. Further, when defendant was asked to lean back and tilt his head back with his eyes closed, there was a sway to his balance. Trooper Alltop also observed a mild odor of alcoholic beverage on defendant's breath.

Defendant was placed under arrest for driving while under the influence of alcohol, read his *Miranda* rights, taken into custody, handcuffed, and placed in the front seat of the patrol car with the seat belt fastened.

Trooper Alltop then asked defendant whether he wanted to let an officer drive his car to the Ellis County Law Enforcement Center in Hays, or leave the car on Cody Street. The defendant told Trooper Alltop he wanted his car to be locked and left at the site. The dome light of defendant's car was on, and defendant, sitting in the patrol car, had a plain view of the trooper's actions through the rear window of defendant's car. Trooper Alltop went to defendant's car, sat in the driver's seat, and removed the keys from the ignition. This was the only set of keys to defendant's car known to Trooper Alltop.

Trooper Alltop conducted a search of defendant's vehicle, starting with the passenger compartment. Two Hays policemen had arrived at the scene and were present when the search took place. Trooper Alltop, while searching for a bottle, found a white tray with a green leafy substance under the driver's seat, and two hemostats underneath the driver's side floor mat. He next found two clear plastic bags containing a green leafy substance in the space between the seat and the driver's side door. Trooper Alltop moved to the back seat and found a green wine bottle that was

"bone dry." He then found an amber colored glass bottle in the back seat area containing seeds and a green stem which he believed to be marijuana.

Trooper Alltop next searched the trunk where he found two more bags and placed them in evidence containers. He then searched the glove compartment and found a white pipe with a screen containing what appeared to be marijuana resin, two plastic bags containing green leafy material, and a brown opaque wooden box containing green leafy material. Trooper Alltop told defendant he was under arrest for possession of marijuana and took him to the Ellis County Law Enforcement Center. Defendant was delivered to the custody of the Ellis County sheriff, whereupon he posted bond and was released.

Defendant was charged with possession of marijuana, possession of paraphernalia, and driving while under the influence of alcohol. Defendant's pretrial motion to suppress the evidence obtained in the search of his vehicle was sustained by Judge Steven P. Flood, who found the following facts: (1) Trooper Alltop agreed to lock defendant's car just before driving to the Ellis County Law Enforcement Center at defendant's request. (2) Trooper Alltop conducted a general search of the entire automobile. (3) Trooper Alltop saw nothing in plain view. (4) There was no possibility the defendant could have destroyed evidence once handcuffed and seatbelted in the patrol car. (5) The defendant left his lane of traffic on four occasions, stopped at a green light, had a slight odor of alcohol on his breath, and performed the field sobriety tests less than perfectly. Judge Flood made the following conclusions of law: (1) The search was not incident to the arrest. (2) The only justification for the search was the search incident to arrest doctrine. (3) Trooper Alltop had no probable cause to suspect defendant's automobile contained any evidence, any contraband, or any item that offended the law. (4) Trooper Alltop had probable cause to arrest defendant for driving while under the influence of alcohol.

The State has timely appealed from the court's pretrial suppression order.

The State's only argument on appeal is that the court erred in finding that the warrantless search of defendant's vehicle was not incident to a lawful arrest. Both parties agree with the trial court's finding that under the facts of this case the only possible

justification for the search is the search incident to arrest doctrine. This doctrine is embodied in K.S.A. 22-2501, which states:

"When a lawful arrest is effected a law enforcement officer may reasonably search the person arrested and the area within such person's immediate presence for the purpose of
"(a) Protecting the officer from attack;
"(b) Preventing the person from escaping; or
"(c) Discovering the fruits, instrumentalities, or evidence of the crime."

Determining whether the search was incident to an arrest so that a warrant is not required involves two considerations: whether the arrest is valid, and whether the search is properly limited in scope to that which is permissible on arrest. 68 Am. Jur. 2d, Searches and Seizures § 37, p. 692; *New York v. Belton,* 453 U.S. 454, 457, 69 L.Ed.2d 768, 101 S.Ct. 2860 (1981); *Terry v. Ohio,* 392 U.S. 1, 19, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968).

Defendant was arrested for DUI, a misdemeanor, in violation of K.S.A. 1983 Supp. 8-1567. K.S.A. 22-2401 provides that a law enforcement officer may arrest a person when:

"(c) He has probable cause to believe that the person is committing or has committed

. . . .

"(2) A misdemeanor, and the law enforcement officer has probable cause to believe that:
"(i) Such person will not be apprehended or evidence of the crime will be irretrievably lost unless such person is immediately arrested; or
"(ii) Such person may cause injury to himself or others or damage to property unless immediately arrested; or
"(d) Any crime has been or is being committed by such person in his view."

This statute embodies the general rule that the validity of a warrantless arrest depends upon whether, at the moment the arrest was made, the officer had probable cause to make it. See *Beck v. Ohio,* 379 U.S. 89, 13 L.Ed.2d 142, 85 S.Ct. 223 (1964); *State v. Morgan,* 231 Kan. 472, 475, 646 P.2d 1064 (1982).

"Probable cause for arrest exists if facts and circumstances within an arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed." *State v. Costello,* 231 Kan. 337, Syl. ¶ 1, 644 P.2d 447 (1982).

In the present case, ample evidence supports a finding of probable cause for defendant's arrest for DUI. Trooper Alltop

had personally observed defendant's vehicle weave from lane to lane without signalling and stop at a green light, had smelled a slight odor of alcohol on defendant's breath, and had witnessed defendant's "imperfect" performance of the field sobriety tests. These facts within Trooper Alltop's knowledge are sufficient in themselves to lead a person of reasonable caution to believe that the offense of DUI was being committed. See *State v. Morgan,* 231 Kan. at 475. The trial court did not err in finding defendant's arrest lawful.

Determining whether the search of defendant's vehicle, conducted by Trooper Alltop, was properly limited in scope to that which is permissible on arrest is more difficult. This question has often been considered by the Supreme Court of the United States. In *Chimel v. California,* 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034, *reh. denied* 396 U.S. 869 (1969), the United States Supreme Court determined that a lawful custodial arrest creates a situation justifying the contemporaneous warrantless search of the arrestee and of the area immediately surrounding the arrestee. This exception to the general requirement of a warrant is justified by the need to remove any weapons the arrestee might attempt to use (*i.e.,* the need to protect the officer) and by the need to prevent destruction or concealment of evidence. *Chimel,* 395 U.S. at 763.

*New York v. Belton,* 453 U.S. 454, applied the *Chimel* principles to the warrantless search of an automobile. In that case, Mr. Belton was stopped for speeding. The policeman discovered that none of the four occupants owned the car. The officer smelled burned marijuana and saw on the car's floor an envelope he suspected of containing marijuana. He then directed Mr. Belton and his three passengers to get out of the car and arrested them for possession of marijuana. The policeman split the arrestees up into four separate areas so that they would not be in physical touching area of one another while standing on the street by the side of the car. He searched the arrestees, then searched the passenger compartment of the car. Cocaine was found inside the pocket of a jacket found in the car. Mr. Belton, indicted for criminal possession of a contraband substance, argued that the search violated the Fourth and Fourteenth Amendments.

The United States Supreme Court began its analysis by recognizing the *Chimel* principle that the scope of a search must be

strictly tied to and justified by the circumstances which rendered its initiation permissible. 453 U.S. at 457. The court recognized that courts had found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. *Belton,* 453 U.S. at 460. *Belton* established the "bright line" rule that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. *Belton,* 453 U.S. 454. The court footnoted its holding with this explanation:

"Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." *New York v. Belton,* 453 U.S. at 460, n. 3.

Cases subsequent to *Belton* have demonstrated that the principles set forth in *Belton* fell short of the stated objective of providing police officers with a more workable standard for determining the permissible scope of searches incident to arrest. 453 U.S. at 458-59. Some courts have interpreted *Belton* to mean that instead of evaluating each custodial arrest of the occupant of a vehicle to determine whether an article was within his immediate control, a court need only find that an article was within the passenger compartment, and it is deemed to have been within the arrestee's immediate control. *State v. Cooper,* 304 N.C. 701, 705, 286 S.E.2d 102 (1982). See *United States v. Rollins,* 699 F.2d 530 (11th Cir. 1983); *United States v. Marquez,* 687 F.2d 328 (10th Cir. 1982). The facts in *State v. Cooper* are similar to those presently before this court in that the defendant was arrested for DUI, and was placed in the patrol car while his car was searched. The search, which revealed a paper bag containing marijuana, was upheld as incident to defendant's arrest. Other courts have read *Belton* more narrowly, and have found it not to apply to searches made while the defendant was arrested, handcuffed, and seated in the back seat of an agent's car without possibility of access to his own vehicle. *United States v. Farinacci-Garcia,* 551 F. Supp. 465 (D. Puerto Rico 1982). See *People v. Long,* 413 Mich. 461, 320 N.W.2d 866 (1982). Under this narrower reading of *Belton,* such searches are made neither at

the time nor place of arrest, and must fall within some other exception to the warrant requirement to be found constitutional.

In the present case, the trial court's suppression of evidence was consistent with the narrower view of *Belton*. However, the Kansas Supreme Court has accepted the broader view in which articles found in a vehicle's passenger compartment are deemed to have been within the recent occupant's (arrestee's) control, justifying a warrantless search.

In the pre-*Belton* case of *State v. Sanders*, 5 Kan. App. 2d 189, 614 P.2d 998 (1980), this court examined the proper scope of a search incident to arrest and stated:

"The justification for the search without a warrant is the officer's immediate need to protect himself or preserve evidence. Here, the appellant, as noted above, had been removed from the car, as had his passenger, before the gun was found. Furthermore, the officers had determined that the car was to be impounded and had so informed appellant; this was also before the gun was found. We conclude the search was not sufficiently limited in scope as it was outside the area within the arrestee's immediate control." 5 Kan. App. 2d at 196-97.

Because the search of the car was not justified by any of the five basic exceptions to the requirement for a search warrant, we held the search to be in violation of the Fourth Amendment of the United States Constitution and Section 15 of the Kansas Bill of Rights.

Soon after *Belton* was decided, this court was confronted with another case questioning the proper scope of a search incident to arrest. In *State v. Croft*, 6 Kan. App. 2d 821, 635 P.2d 972 (filed November 13, 1981), defendant was arrested for driving without a license. He was outside but near the car when a police officer searched it and found a radio scanner. In upholding the warrantless search, we stated:

"One of these exceptions is for the search incident to a lawful arrest. Appellant concedes he was arrested for having no driver's license in his possession. The critical question, he feels, is whether the search was sufficiently limited in scope to be justified. That question was recently answered by the U.S. Supreme Court in *New York v. Belton*, 453 U.S. 454, 460, 69 L.Ed.2d 768, 775, 101 S.Ct. 2860 (1981). There it was held 'that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.'

"The appellant was lawfully arrested. The scanner was found in the passenger compartment. Under the *Belton* rule the search was proper." p. 823.

In February of 1982, the Kansas Supreme Court decided *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982). In *White*, defend-

ant was removed from his vehicle and arrested. Search of the vehicle revealed a jacket and cap which had apparently been worn in a recent robbery lying on the front seat. The court answered defendant's contention that the articles of clothing should have been suppressed as fruits of an illegal search by these words:

"The U.S. Supreme Court has recently addressed the very question presented herein. In *New York v. Belton,* 453 U.S. 454, 460, 69 L.Ed.2d 768, 101 S.Ct. 2860 (1981), it was held 'that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.'

"This is precisely what occurred herein and the trial court did not err in refusing to suppress the clothing taken from the automobile. We note *State v. Croft,* 6 Kan. App. 2d 821, 635 P.2d 972 (1981), wherein the Court of Appeals applied the *Belton* decision and reached the same result." 230 Kan. at 680.

The most recent case in which the Kansas Supreme Court has examined the scope of a search incident to arrest is *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174, filed December 2, 1983, a case quite similar to that presently before this court. Here, the trial court's decision, filed in April of 1983, would not have had the benefit of the *Deskins* case.

In *Deskins,* police officers stopped vehicles at a roadblock ostensibly set up for the purpose of checking drivers' licenses. Deskins showed his license to the officer, who smelled a strong odor of alcohol on Deskins' breath. The officer then asked Deskins to take a sobriety and coordination test. Deskins' performance of these tests was less than satisfactory to the officer, who arrested Deskins for DUI, read him his *Miranda* rights, and placed him in a squad car. "While [Deskins] remained in the police car, one of the officers searched [his] automobile and found in the glove-box a plastic bag containing marijuana." 234 Kan. at 531. Deskins was charged with DUI and possession of marijuana. The trial court suppressed all evidence found in the search.

The *Deskins* opinion extensively examined the constitutionality of the initial stop of Deskins' vehicle. The court upheld the constitutionality of the stop since the driver's license/DUI roadblock stopped all vehicles in the traffic lane and was pursuant to sufficient standards, guidelines, and protections of an individual's right to privacy, and was not a random stopping of only certain vehicles based on an officer's unbridled discretion. The court then addressed the scope of the search by stating:

"Having determined that the initial stop or seizure was not constitutionally invalid, the officer had sufficient reason and probable cause to place defendant under arrest when it appeared he was under the influence of alcohol. The arrest of the defendant being lawful, the search of the passenger compartment of his automobile was also lawful. *State v. White,* 230 Kan. 679, 640 P.2d 1231 (1982)." 234 Kan. at 543.

As in *Deskins,* the defendant in the present case was arrested for DUI, was read his *Miranda* rights, and was placed in a patrol car where he remained while his vehicle was being searched. *Deskins* clearly controls the present case. Accordingly, the search of the passenger compartment of defendant's automobile was lawful.

Defendant argues that incriminating evidence was found not only in the vehicle's passenger compartment, but also in the vehicle's trunk. Defendant's brief notes that the trunk was searched after the trooper had found marijuana in the vehicle's passenger compartment. Even this search of the trunk must be upheld under the rule and principles of *United States v. Ross,* 456 U.S. 798, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982), as applied in *State v. Harder,* 8 Kan. App. 2d 98, 650 P.2d 724 (1982).

In *Harder,* a police officer had stopped Mr. Harder's pickup truck to see whether Harder was driving with a suspended driver's license. The officer shined his flashlight into the passenger compartment where he observed a baggie of marijuana. The officer then arrested Harder and searched the truck. In the rear of the truck the officer found another baggie of marijuana in an unlocked toolbox. The initial shining of the flashlight into the passenger compartment was justified by the "plain view" doctrine. 8 Kan. App. 2d at 100-01. In response to Harder's contention that the warrantless search of the unlocked toolbox in the truck bed constituted an illegal search, we said:

"In *State v. Jaso,* 231 Kan. 614, Syl. ¶ 5, 648 P.2d 1 (1982), the court held:

" 'When police officers have made a lawful stop of a vehicle and have probable cause to believe that contraband is in the vehicle, the officers may search every area of the vehicle and its contents which might reasonably contain the contraband without the necessity of first obtaining a warrant.'

"In *United States v. Ross,* 456 U.S. 798, 72 L.Ed.2d 572, 102 S.Ct. 2157 (1982), the court held that police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the vehicle that is as thorough as a magistrate could authorize by warrant.

"Under the facts of this case, it is clear that the officers had probable cause to believe, after already finding one bag of marijuana in the truck, that the truck contained other contraband. They therefore were entitled to search the unlocked toolbox." *State v. Harder*, 8 Kan. App. 2d at 101.

In the present case, Trooper Alltop lawfully stopped defendant's vehicle and lawfully arrested him for DUI. Under the interpretation of *Belton* evidenced in *Deskins*, Trooper Alltop's search of the passenger compartment of defendant's vehicle was also lawful. Trooper Alltop's search of that passenger compartment revealed a "white tray containing green leafy substance" under the driver's seat, two hemostats under the driver's floormat, two clear plastic bags containing a green leafy substance between the driver's seat and the door, and an amber colored bottle containing seeds and a green stem in the back seat. Trooper Alltop believed those green leafy substances to be marijuana. Under these facts, it is clear that Trooper Alltop had probable cause to believe that defendant's vehicle contained other contraband. He was therefore entitled to search the trunk of defendant's car.

The trial court erred in ruling that the evidence suppressed had been obtained in an illegal search of defendant's vehicle.

Reversed and remanded.

REES, J.: I dissent.

This is an appeal from an order suppressing evidence obtained in a warrantless search. The only real question before us is whether Trooper Alltop's search of the passenger compartment of Press' automobile was constitutionally reasonable, or, in other words, whether that search was lawful or unlawful.

There is no real question whether Press was under lawful custodial arrest for DUI. He clearly was. Furthermore, the lawfulness of the automobile compartment search is determinative of the question whether the car trunk search was lawful.

I find certain of the majority's fact statements somewhat inaccurate, but because of lack of real materiality to dispositive questions, this disagreement is not worthy of particularized discussion. Most importantly, I disagree with the majority's insufficiently considered application in this case of the following language from *New York v. Belton*, 453 U.S. 454, 460, 69 L.Ed.2d 768, 101 S.Ct. 2860 (1981):

"[W]hen a policeman has made a lawful custodial arrest of the occupant of an

automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"[T]he police may also examine the contents of any containers found within the passenger compartment . . . ."

The landmark case for present purposes is *Chimel v. California*, 395 U.S. 752, 23 L.Ed.2d 685, 89 S.Ct. 2034, *reh. denied* 396 U.S. 869 (1969), an incident to arrest area search case. There the facts were that police officers executed an arrest warrant by arresting the defendant in his home for burglary of a coin shop. After arresting the defendant, the officers conducted a warrantless search of his entire three-bedroom house, including the attic, the garage, a small workshop, and various drawers. The question was the admissibility into evidence of coins found in that search and the legality of the search was the determinative issue. *Chimel* held:

"When an arrest is made, it is [constitutionally] reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is [constitutionally] reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

. . . .

". . . In [*Preston v. United States*, 376 U.S. 364, 11 L.Ed.2d 777, 84 S.Ct. 881 (1964)], three men had been arrested in a parked car, which had later been towed to a garage and searched by police. We held the search to have been unlawful under the Fourth Amendment, despite the contention that it had been incidental to a valid arrest. Our reasoning was straightforward:

" 'The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest.' . . .

. . . .

". . . No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items. The only

reasoned distinction is one between a search of the person arrested and the area within his reach on the one hand, and more extensive searches on the other. . . . .

". . . The search here went far beyond the petitioner's person and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him. There was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area. The scope of the search was, therefore, 'unreasonable' under the Fourth and Fourteenth Amendments, and the petitioner's conviction cannot stand." 395 U.S. at 762-68.

Following *Chimel* came *United States v. Robinson*, 414 U.S. 218, 38 L.Ed.2d 427, 94 S.Ct. 467 (1973), and *United States v. Edwards*, 415 U.S. 800, 39 L.Ed.2d 771, 94 S.Ct. 1234 (1974). *Robinson*, an incident to arrest search of the person case, has this to say:

"The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. . . . [I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." 414 U.S. at 235.

In *United States v. Edwards*, 415 U.S. 800, the facts were that some ten hours after his incarceration following arrest at a distant location, a jailed defendant's clothing, which he had been wearing at the time of and since his arrest, was taken from him and subjected to a laboratory examination. Admissibility of the clothing and results of the examination were challenged. The clothing was seized with the defendant when he was arrested and both it and he were in police custody continuously from and after the time of his arrest. Under the particular facts of *Edwards*, there was probable cause to seize and examine Edwards' clothing. However, if the taking of Edwards' clothing and its examination is viewed as an incident to arrest search, it was a delayed search of the person. With respect to incident to arrest searches, *Edwards* says:

"The prevailing rule under the Fourth Amendment that searches and seizures may not be made without a warrant is subject to various exceptions. One of them permits warrantless searches incident to custodial arrests . . . and has traditionally been justified by the reasonableness of searching for weapons, instruments of escape, and evidence of crime when a person is taken into official custody and lawfully detained." 415 U.S. at 802-03.

Presently important is *Chimel's* identification of the spatial scope of a lawful incident to arrest search. This identification is twice stated in a single paragraph:

"the person arrested . . . [and] the area into which [the] arrestee might reach in order to grab a weapon or evidentiary items . . . ."

and

"the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. at 763.

Keeping the foregoing as case law background for *Belton's* appearance on the scene, let us see what is found in that case.

*Belton*, 453 U.S. 454, is an incident to arrest area search case. In it there was no question that the defendant was the subject of a lawful custodial arrest for possession of marijuana. 453 U.S. at 462. The physical evidence, the admissibility of which was challenged, was discovered in a warrantless search of an unlocked, closed container found in the passenger compartment of an unoccupied automobile. More particularly, the physical evidence sought to be suppressed was cocaine seized from within a zippered pocket of a leather jacket belonging to Belton found on the back seat of an automobile he and three others had occupied and from which they had removed themselves at the arresting officer's direction. That particular search and seizure is the factual context within which *Belton* was decided and with respect to which that decision must be read. In the case before us, we also have a closed container search. The bottom line of *Belton* is its decision that Belton's jacket was within the area that was "within the arrestee's immediate control" within the meaning of the *Chimel* case and, therefore, the search of the jacket was an incident to arrest search that did not violate the Fourth Amendment proscription of unreasonable searches and seizures. 453 U.S. at 462-63; U.S. Const., Fourth Amend.

The opinions in *Belton* report the views of a divided Court. I look to Justice Stewart's opinion of the Court for exposition of the facts and holdings in the case.

*Belton* begins by expressing the presented issue to be:

"When the occupant of an automobile is subjected to a lawful custodial arrest, does the constitutionally permissible scope of a search incident to his arrest include the passenger compartment of the automobile in which he was riding?" 453 U.S. at 455.

### Then this is said:

"[The policeman] . . . directed the men to get out of the car, and placed them under arrest for the unlawful possession of marihuana. He patted down each of the men and 'split them up into four separate areas of the Thruway at this time so they would not be in physical touching area of each other.' . . . After giving the arrestees the [*Miranda*] warnings . . . the . . . policeman searched each one of them. He then searched the passenger compartment of the car. . . .

". . . The Appellate Division of the New York Supreme Court upheld the constitutionality of the search and seizure, reasoning that '[o]nce defendant was validly arrested for possession of marihuana, the officer was justified in searching the immediate area for other contraband.' . . .

"The New York Court of Appeals reversed, holding that '[a] warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest where there is no longer any danger that the arrestee or a confederate might gain access to the article.' . . . Two judges dissented. They pointed out that the 'search was conducted by a lone peace officer who was in the process of arresting four unknown individuals whom he had stopped in a speeding car owned by none of them and apparently containing an uncertain quantity of a controlled substance. The suspects were standing by the side of the car as the officer gave it a quick check to confirm his suspicions before attempting to transport them to police headquarters.' . . . We granted certiorari to consider the constitutionally permissible scope of a search in circumstances such as these. . . ." 453 U.S. at 456-57.

### Sharpening the issue, *Belton* says:

"[N]o straightforward rule has emerged from the litigated cases respecting the question involved here—the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial search of its occupants. The difficulty . . . is confirmed by a look at even a small sample drawn from the narrow class of cases in which courts have decided *whether, in the course of a search incident to the lawful custodial arrest of the occupants of an automobile, police may search inside the automobile after the arrestees are no longer in it.* On the one hand . . . cases . . . have upheld such warrantless searches as incident to lawful arrests. . . . [I]n [other] cases . . . such searches, in comparable factual circumstances, have been held constitutionally invalid.

". . . While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable *definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant.*" (Emphasis added.) 453 U.S. at 459-60.

### Then *Belton* gives its answer:

"[W]e hold that when a policeman has made a lawful custodial arrest of the

occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

"[T]he police may also examine the contents of any containers found within the passenger compartment . . . whether . . . open or closed . . . ." (453 U.S. at 460-461.),

with the explicit admonition that:

"Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic context. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." 454 U.S. at 460, n. 3.

*Belton* must be read to say that the Supreme Court took it as a fact of that case that when the search was initiated and made, Belton and his three companions were standing by the side of their automobile, beyond arm's length from one another.

In substance, *Belton* is a specialized identification of the *Chimel* delineation of the spatial scope of a lawful incident to arrest area search. *Belton's* identification of *Chimel's* "reach and grab" area or "area within the arrestee's immediate control" delineation clearly is applicable only to the narrow class of cases *Belton* represents. Cases in that class are those where the arrestee is an automobile occupant who is no longer in the automobile and the interior of that automobile is arguably within the area of the arrestee's immediate control, that is, within the area from within which he might gain possession of a weapon or evidentiary items.

What are the pertinent facts in the case before us? Press was alone when stopped on a city street in Hays, Kansas, the county seat of Ellis County, at about 11:00 p.m. on Tuesday, March 8, 1983. He was cooperative when stopped and in dealing with Alltop, the arresting officer. He was driving his own automobile. There were four persons present at the scene when the search was initiated and conducted—three officers and Press. Press was out of and away from his automobile. He was in Alltop's patrol car, handcuffed and secured by a lap belt to its front seat. The patrol car was parked six or seven feet behind defendant's automobile.

We are not dealing here with a probable cause search nor with an incident to arrest search of the person. This is an incident to arrest area search case.

From the case law reviewed above, we learn that a contemporaneous incident to arrest area search is justified by concerns for

the safety of the arresting officer and for the arrestee's concealment or destruction of evidentiary items. On its facts, in the present case neither of the two justifications for an incident to arrest area search was existent. There was no danger to Alltop's person or of escape, nor was there danger of defendant's concealment or destruction of evidentiary items. Defendant was not standing by the side of his automobile. He was physically restrained and immobilized in a patrol car at a distance from both his automobile and Alltop. One of the other officers was "keeping an eye on him." No part of the area searched, the interior of defendant's automobile, was an area into which he could arguably "reach and grab" or an area from within which he could arguably gain possession of a weapon or evidentiary items. The search was beyond the area from within which the defendant might obtain weapons or evidentiary items. There was no justification to excuse the search from the constitutional requirement of a warrant. The search was beyond the permitted scope of an incident to arrest area search. The search was constitutionally unreasonable and invalid. The trial judge's suppression order should be sustained.

It is apparent that my conclusion that the trial judge correctly ordered suppression has been reached upon my giving consideration only to United States Supreme Court decisions. Does Kansas case law require a different conclusion? I believe not.

It seems we have three relevant appellate decisions that have come down since *Belton*. In chronological order they are *State v. Croft*, 6 Kan. App. 2d 821, 635 P.2d 972 (1981); *State v. White*, 230 Kan. 679, 640 P.2d 1231 (1982); *State v. Deskins*, 234 Kan. 529, 673 P.2d 1174 (1983). The particular *Belton* language upon which these cases say they rely has been twice stated above and, again, is this:

"[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. at 460.

In *Croft*, 6 Kan. App. 2d 821, the critical question was whether the search of the defendant's automobile improperly exceeded the scope of a permissible incident to arrest area search. Defendant conceded he was the subject of lawful custodial arrest. 6 Kan. App. 2d at 823. Defendant's brief on appeal discloses his contention was that the interior of his automobile

was not subject to search because he and his passenger were not in it. The *Croft* opinion reveals that after the automobile was stopped, defendant and his passenger immediately got out and the officers ordered them to stay near the car. 6 Kan. App. 2d at 822. Defendant and his passenger were not at a distance from their automobile; they were standing by it. They were not physically restrained and immobilized. The interior of the automobile was arguably within the area from within which they or either of them might gain possession of a weapon or evidentiary items. *Belton* was properly applied albeit without detailed discussion.

In *White,* 230 Kan. 679, the *Belton* sentence was quoted. With all due respect, in my view it was mistakenly held applicable and dispositive. In *White* there was plain view, not a constitutionally questionable search. If the plain view doctrine is not applied, the *White* "search" was a permissible probable cause search.

The *White* opinion states only that "[a] high-speed chase ensued with the defendant finally being arrested after his vehicle was rammed by a police car. Following the removal of defendant from the automobile, an officer reached into the vehicle and seized a jacket and cap lying on the front seat." The briefs on appeal disclose that when the search was made, the defendant was not at the scene; he had been placed in a police car which had departed en route to the scene of the robbery. Our Supreme Court's failure to speak of and consider this in the context of *Chimel's* principles is beyond criticism. In his brief, citing but three cases, defendant said he conceded his position was contrary to Kansas case authority, *e.g., State v. Barry,* 216 Kan. 609, 533 P.2d 1308 (1974), and merely asked that that authority be reversed; no mention was made of *Belton, Chimel,* or any other automobile search case law.

*Deskins* is factually closer to the case before us. There,

"[T]hirty-five to forty police officers . . . set up a roadblock . . . . Deskins . . . was stopped in the check lane. . . .

". . . The officer asked Deskins to step out of the car to take a sobriety and coordination test. His performance was less than satisfactory to the officer and . . . he arrested [Deskins] and read him the *Miranda* rights. The trooper moved [Deskins] to a squad car . . . . While [Deskins] remained in the police car, one of the officers searched [Deskins'] automobile and found in the glove-box a plastic bag containing marijuana." 234 Kan. at 531.

*Deskins* came before the Supreme Court on an interlocutory

appeal by the State. According to the *Deskins* opinion, the Supreme Court viewed the case as one in which "the narrow question before [it was] whether the use of a DUI roadblock under the factual situation existing . . . [was] an unconstitutional infringement upon a person's right to be free from unreasonable searches and seizures . . . ." *Deskins,* 234 Kan. at 530-31. I cannot agree that, as my colleagues say, *Deskins* "examined the scope of a search incident to arrest." Nowhere in *Deskins* do I find exposition of such an examination. Regarding incident to arrest search and citing *White* as authority, *Deskins* simply and only says, "The arrest of [Deskins] being lawful, the search of the passenger compartment of his automobile was also lawful." 234 Kan. at 543. The *Deskins* opinion displays examination of a roadblock stopping. In my view it is incorrect to find and say that *"Deskins* clearly controls the present case."

Our Supreme Court should not be faulted for its disposition in *Deskins* of the incident to arrest search question without examination and by the single sentence utilized. No brief on appeal was filed on behalf of Deskins and therefore it cannot be said that before the Supreme Court he disputed the State's position that subject to the lawfulness of his arrest, the automobile compartment search was a lawful incident to arrest search.

In summary, I find the thrice-stated *Belton* sentence is an insufficient answer in this case. *Belton* "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to . . . arrests." 453 U.S. at 460, n. 3. In applying these principles, I believe there was no justifiable incident to arrest search of Press' automobile.

For such worth as they may have, if any, I add these comments. K.S.A. 22-2501 is merely a statement of a proposition of general law and refers only to warrantless incident to arrest search. *State v. Tygart,* 215 Kan. 409, 524 P.2d 753 (1974); Judicial Council Note to K.S.A. 22-2501. Although it predates *Belton, State v. Tygart* merits consideration with respect to the subject of warrantless probable cause and incident to arrest automobile searches. In *State v. Berry,* 216 Kan. at 616, three cases, *State v. Tygart,* 215 Kan. 409; *State v. Atkinson,* 215 Kan. 139, 523 P.2d 737 (1974); and *State v. Moretz,* 214 Kan. 370, 520 P.2d 1260 (1974), appear to be cited as automobile incident to arrest search authority. There should be use of those three cases as such

authority only after careful review of them with respect to the possibility that they are automobile probable cause search cases.

To repeat, I would sustain the suppression order. This case should be reviewed by our Supreme Court for the guidance of Kansas law enforcement officers, the trial courts and this court. See *New York v. Belton,* 453 U.S. at 470, Justice Brennan dissenting.